Case 2:21-cr-00319-AGR   Document 6   Filed 07/13/21   Page 1 of 19   Page ID #:11



FILED
CLERK, U.S. DISTRICT COURT
07/13/21
CENTRAL DISTRICT OF CALIFORNIA
BY: ___DM___ DEPUTY

```
 1  TRACY L. WILKISON
    Acting United States Attorney
 2  SCOTT M. GARRINGER
    Assistant United States Attorney
 3  Chief, Criminal Division
    MARK A. WILLIAMS (Cal. Bar No. 239351)
 4  Assistant United States Attorney
    Chief, Environmental and Community Safety Crimes Section
 5       1300 United States Courthouse
         312 North Spring Street
 6       Los Angeles, California 90012
         Telephone: (213) 894-3359
 7       E-mail:    mark.a.williams@usdoj.gov

 8  Attorneys for Plaintiff
    UNITED STATES OF AMERICA
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:21-cr-00319-MWF |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT JONATHAN PAUL GERSHMAN |
| v. | |
| JONATHAN PAUL GERSHMAN, | |
| Defendant. | |

   1.   This constitutes the plea agreement between defendant JONATHAN PAUL GERSHMAN ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

   2.   Defendant agrees to:

        a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a two-count information in the form attached to this agreement as Exhibit A or a

1  substantially similar form, which charge defendant with using a
2  registered pesticide in a manner inconsistent with its labeling in
3  violation of 7 U.S.C. §§ 136j(a)(2)(G), 136l(b)(2).
4           b.   Not contest facts agreed to in this agreement.
5           c.   Abide by all agreements regarding sentencing contained
6  in this agreement, and affirmatively recommend and advocate for the
7  sentence agreed to by the parties in paragraph 15.
8           d.   Appear for all court appearances, surrender as ordered
9  for service of sentence, obey all conditions of any bond, and obey
10 any other ongoing court order in this matter.
11          e.   Not commit any crime; however, offenses that would be
12 excluded for sentencing purposes under United States Sentencing
13 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
14 within the scope of this agreement.
15          f.   Be truthful at all times with the United States
16 Probation and Pretrial Services Office and the Court.
17          g.   Pay the applicable special assessments at or before
18 the time of sentencing unless defendant has demonstrated a lack of
19 ability to pay such assessments.
20      3.   Defendant further agrees to cooperate fully with the USAO,
21 the Environmental Protection Agency, and, as directed by the USAO,
22 any other federal, state, local, or foreign prosecuting, enforcement,
23 administrative, or regulatory authority.  This cooperation requires
24 defendant to:
25          a.   Respond truthfully and completely to all questions
26 that may be put to defendant, whether in interviews, before a grand
27 jury, or at any trial or other court proceeding.
28

      b.    Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

      c.    Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

      d.    For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement or pursuant to the letter agreement previously entered into by the parties dated December 4, 2020 (the "Letter Agreement"); and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

## THE USAO'S OBLIGATIONS

4.    The USAO agrees to:

      a.    Not contest facts agreed to in this agreement.

      b.    Abide by all agreements regarding sentencing contained in this agreement.

5.    The USAO further agrees:

      a.    Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the USAO, any Cooperation Information. Defendant agrees, however, that the USAO may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to

other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

      b.  Not to use Cooperation Information against defendant at sentencing for the purpose of determining the sentence to be imposed.  Defendant understands, however, that Cooperation Information will be disclosed to the United States Probation and Pretrial Services Office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

      c.  In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

      d.  If the USAO determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to affirmatively recommend and advocate for the sentence agreed to by the parties in paragraph 15.

      DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

6.  Defendant understands the following:

      a.  Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement,

obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

      b.   Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

      c.   Defendant cannot withdraw defendant's guilty pleas if the USAO does not make the recommendation set forth in paragraph 15.

      d.   At this time the USAO makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes or will constitute substantial assistance.  The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the USAO.

      e.   The USAO's determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

## NATURE OF THE OFFENSES

7.   Defendant understands that for defendant to be guilty of the crimes charged in counts one and two, that is, using a registered pesticide in a manner inconsistent with its labeling in violation of 7 U.S.C. §§ 136j(a)(2)(G), 136l(b)(2), the following must be true: defendant knowingly caused the use of a registered pesticide in a manner inconsistent with the pesticide's labeling.

PENALTIES

8. Defendant understands that the statutory maximum sentence that the Court can impose for each violation of 7 U.S.C. §§ 136j(a)(2)(G), 136l(b)(2), is: 30 days' imprisonment; a 5-year period of probation or a 1-year period of supervised release; a fine of $5,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $5.

9. Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 60 days' imprisonment; a 5-year period of probation or a 1-year period of supervised release; a fine of $10,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $10.

10. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

11. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or

supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

12. Defendant understands that, if defendant is not a United States citizen, the convictions in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the convictions in this case. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty pleas.

## FACTUAL BASIS

13. Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

In 2020, the novel coronavirus SARS-CoV-2 ("COVID-19") caused a global pandemic that sickened and killed millions of people, including many in the United States. As a result of the pandemic, it was well-known that the U.S. Environmental Protection Agency ("EPA") and other agencies strictly regulated disinfectants and personal protective equipment that could be used to protect healthcare workers

7

and the public from COVID-19. As part of that regulatory effort, the EPA created the "List N: Disinfectants for Coronavirus (COVID-19)" that listed products that killed COVID-19 when used according to the products' labeling.

In early 2020, defendant began working as a salesman for Company 1, a company that was primarily operated by Individual 1. Company 1 provided fogging services for houses and made various claims regarding its services, including that it was "a patented provider of environmentally safe Covid-19 removal and sterilization solutions. The non-toxic chemical we use in our cold sterilant is listed by the EPA as effective in killing the Covid-19 virus."

Company 1 used two products when it provided fogging services in houses. Company 1's employee would first apply "Alpha," which Company 1 claimed would kill COVID-19. Company 1's employee would then apply "Omega," which Company 1 claimed would kill COVID-19 on surfaces for 90 days after treatment. Company 1's website claimed that "if someone coughs or sneezes, the droplets will fall out of the air over time and come in contact with the Omega treated surface. Upon contact, the microbe will be killed and the surface made safe." Company 1's website also claimed that "[w]e warrant that this process will kill virus, bacteria and mold and keep treated areas sterile for 90 days."

Alpha and Omega were actually different registered pesticides that Company 1 re-named and claimed were its own. Alpha was actually a registered pesticide called Minncare, a product that could only be used to sterilize hard surfaces if applied for 11 hours. Omega was also a different registered pesticide called SiS AM500 that was not registered for use against any viruses. Alpha and Omega were not

approved by EPA to kill COVID-19.  The actual labels for both registered pesticides specifically stated that "[i]t is a violation of Federal Law to use this product in a manner inconsistent with its labeling."

In June 2020, a Special Agent with the Environmental Protection Agency, Office of Criminal Investigations, who was working in an undercover capacity (the "UC"), contacted defendant about using Company 1's disinfection services at several properties in the Los Angeles area.  Defendant indicated that they refer to Company 1's service as "sterilization" as opposed to disinfection or sanitization, and also claimed that Alpha and Omega were food safe, plant safe, and safe for children.  Defendant stated that he could provide a print-out stating "guaranteed 90 days certified sterilized" that could be placed on the properties that were treated by Company 1.

After selling Company 1's fogging treatment to the UC, on June 23, 2020, an employee of Company 1 arrived at the undercover house to provide the fogging services.  The employee set up the fogging equipment and showed the Alpha and Omega products that he intended to use to the UC, but the undercover operation was stopped once the fogger was turned on.  When he was confronted by the UC after the undercover operation was halted, defendant indicated, among other things, that defendant was uncomfortable with the COVID-19 related claims and "strongly" raised his concerns to Individual 1, but Individual 1 assured him that "we can make the [COVID] claims."

In addition to selling Company 1's COVID-19 fogging services in connection with the undercover operation, defendant also sold the same services on at least six other occasions.  For example, with

respect to count one, in April 2020 defendant sold Company 1's COVID-19 fogging services to a business in Culver City, California. Company 1's employees then applied Alpha and Omega inside the business in a manner that was inconsistent with the pesticides' labeling because the pesticides were not approved to kill COVID-19. Company 1 also provided a certificate to the business that stated "Covid-19 Safe Area" and "ALL BACTERIA, MOLD, AND VIRUSES HAVE BEEN ELIMINATED AND A PROTECTIVE BARRIER HAS BEEN APPLIED.  ALL SURFACES TREATED WITH THIS PROCESS WILL REMAIN MICROBE FREE FOR AT LEAST 90 DAYS AS CONFIRMED BY THE EPA/FDA."

In addition, with respect to count two, defendant sold Company 1's COVID-19 fogging services to a private residence in the Central District of California.  Company 1's employees applied the Alpha and Omega chemicals inside that residence in a manner that was inconsistent with the pesticides' labeling because the pesticides were not approved to kill COVID-19.

## SENTENCING FACTORS

14.  Defendant understands that although the Sentencing Guidelines do not apply to defendant's offense pursuant to U.S.S.G. § 1B1.9, the Court is required to consider the sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that after considering the § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

15.  Defendant and the USAO agree that, taking into account the factors set forth in 18 U.S.C. § 3553(a), the following sentence is appropriate and request that the Court impose it:

    a. A two-year period of probation with terms and conditions to be set by the Court; and

    b. A fine of $10,000.

WAIVER OF PRESENTENCE REPORT AND REQUEST FOR IMMEDIATE SENTENCING

 16. Defendant requests, and the government does not object, that defendant be sentenced as soon as possible following the entry of defendant's guilty plea. To the extent defendant has a right to a presentence investigation and preparation of a presentence report, defendant hereby knowingly, voluntarily, and intelligently waives that right. Defendant requests that the court find, pursuant to Federal Rule of Criminal Procedure 32(c)(1), that the information in the record in this plea agreement, as well as any supplemental evidence offered at the sentencing hearing, is sufficient to enable the court to exercise its sentencing authority meaningfully without a more complete presentence investigation and report. The parties understand and agree that, in the event that the court declines to make this finding and instead orders that a presentence investigation be conducted and/or a presentence report prepared, such action shall have no effect on the validity of this agreement or any of its terms or conditions and shall not provide a basis for either party to withdraw from the plea agreement.

## WAIVER OF CONSTITUTIONAL RIGHTS

 17. Defendant understands that by pleading guilty, defendant gives up the following rights:

    a. The right to persist in a plea of not guilty.

    b. The right to a speedy and public trial by jury.

    c. The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant

understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

    d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

    e. The right to confront and cross-examine witnesses against defendant.

    f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

    g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

    h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

18. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

19. Defendant agrees that, provided the Court imposes a total term of probation on all counts of conviction of no more than five years, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of probation imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

20. The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

21. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then: (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action

that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

22. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

23. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

24. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

    a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

    b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

    c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>
<u>OFFICE NOT PARTIES</u>

25. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing

15

recommendations or the parties' agreements to facts or sentencing factors.

26. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court; and (b) correct any and all factual misstatements relating to the Court's determination of sentence. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

27. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

28. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional

promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

29. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
Acting United States Attorney

*Mark A. Williams*            July 9, 2021
_____     _____
MARK A. WILLIAMS                     Date
Assistant United States Attorney

[signature]               7/1/2021
_____     _____
JONATHAN PAUL GERSHMAN        Date
Defendant

[signature]               7/1/21
_____     _____
ROBERT GERSHMAN                  Date
Attorney for Defendant
JONATHAN PAUL GERSHMAN

<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms.

I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a) and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____     _7/1/2021_____
JONATHAN PAUL GERSHMAN              Date
Defendant


### CERTIFICATION OF DEFENDANT'S ATTORNEY

I am defendant JONATHAN PAUL GERSHMAN's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a) and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this

agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____     _____7/1/21_____
ROBERT GERSHMAN                                        Date
Attorney for Defendant
JONATHAN PAUL GERSHMAN